# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| In re:<br><br>ABIGAIL SARAH ALEXANDER,<br><br>Debtor. | Case No. 19-10686-tmd<br><br>Chapter 7<br><br>HON. TONY M. DAVIS |

**MOTION TO APPROVE SETTLEMENT BETWEEN DEBTOR AND CATHOLIC HEALTH INITIATIVES COLORADO D/B/A SISTERS OF CHARITY HEALTH SERVICES COLORADO PURSUANT TO FED. R. BANKR. P. 9019(a) AND L. RULE 9019**

**This pleading requests relief that may be adverse to your interests.**

**If no timely response is filed within 21 days from the date of service, the relief requested herein may be granted without a hearing being held.**

**A timely filed response is necessary for a hearing to be held.**

Creditor-Plaintiff, Catholic Health Initiatives Colorado, doing business as Sisters of Charity Health Services Colorado ("CHIC"), by and through its undersigned counsel, respectfully submits this motion to approve the Settlement Agreement and Mutual Release, dated February 5, 2020, between CHIC and the debtor, Abigail Sarah Alexander (the "Debtor"), attached to this motion as Exhibit A (the "Settlement Agreement"), pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 9019, as follows:

4841-8636-9714.3

# I. BRIEF FACTUAL BACKGROUND

## A. The Beacon Indebtedness.

1. CHIC owns certain real property in Fremont County, Colorado, which is commonly known as 1338 Phay Avenue, Canon City, Colorado 81212 (the "Property"). CHIC and its affiliates own and operate the St. Thomas More Hospital (the "Hospital"), which is situated on the Property.

2. On or about April 14, 2017, Canon City Healthcare Properties, LLC ("CCHP") entered into that certain Ground Lease, dated April 14, 2017 (the "Ground Lease"), for certain property situated on the Property and as more particularly described in the Ground Lease (the "CCHP Property").

3. On or about April 14, 2017, and in connection with the Ground Lease, U.S. Bank National Association ("U.S. Bank") and CCHP entered into that certain Deed of Trust, Assignment of Leases and Rents, Security and Fixture Filing, dated April 17, 2017 (the "U.S. Bank DOT"), which encumbers CCHP's interests in the CCHP Property and which was recorded with the Clerk and Recorder for Fremont County, Colorado (the "Recorder") at Reception No. 949736.

4. On or about July 27, 2017, CHIC and Monarch Partners, Inc., a Colorado corporation doing business as Skyline Contractors and Skyline Roofing ("Monarch"), which was owned and operated by the Debtor and Justin Javernick ("Javernick"), entered into a Contract for roofing work (the "Roofing Contract") to repair and replace the damaged roof at the Hospital (the "Roofing Project") for the total amount of $1,269,134.80 (the "Contract Price").

4841-8636-9714.3

5. In connection with the Roofing Project, and unbeknownst to CHIC, Monarch contracted with Beacon Sales Acquisition, Inc. d/b/a Roofing Supply Group, a Beacon Roofing Supply Company and Allied Building Products ("Beacon"), to provide roofing materials for the Roofing Project (the "Roofing Materials"). Between September 2017 and May 2018, Beacon sent Monarch approximately 46 invoices for the Roofing Materials for the total sum of $368,343.68 (the "Invoices").

6. Although CHIC paid Monarch the Contract Price in full, Monarch did not pay Beacon's Invoices and Beacon alleged that Monarch owes it the principal amount of $368,343.68, together with interest on this principal amount and Beacon's attorneys' fees and costs associated with the unpaid Invoices (the "Beacon Indebtedness").

**B.  Colorado Litigation and the Debtor's Bankruptcy Case.**

7. On May 15, 2018, Beacon recorded a Statement of Mechanics' Lien with the Recorder at Reception Number 961829 (the "Mechanic's Lien").

8. On August 15, 2018, Beacon commenced an action in the District Court for Fremont County, Colorado, Case No. 2018CV030106 (the "Colorado Litigation"), asserting claims against CHIC, CCHP, U.S. Bank, Monarch, the Debtor, and Javernick seeking to, among other things, foreclose its Mechanic's Lien on the Property and recover the Beacon Indebtedness.

9. On August 16, 2018, and in connection with the Colorado Litigation, Beacon recorded its Notice of Lis Pendens with the Recorder at Reception No. 964883 (the "Lis Pendens").

10. On May 26, 2019, the Debtor filed a voluntary petition under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") with this Court, commencing the above-

3

captioned chapter 7 case (the "Bankruptcy Case").

11. On July 15, 2019, CHIC filed cross claims in the Colorado Litigation against Monarch and Javernick for breach of the Roofing Contract and for violation of the Colorado trust fund statute, C.R.S. §38-22-127 (the "CHIC Cross-Claims").

12. On August 22, 2019, Beacon filed its Complaint (1) To Deny Abigail Sarah Alexander Discharge Under 11 U.S.C. § 727; and (2) Object to Discharge of Creditor's Claim Under 11 U.S.C. § 523(a)(2) against the Debtor in the Bankruptcy Case, commencing an adversary proceeding in this Court styled *Beacon Sales Acquisition.Inc.* [*sic*] *v. Abigail Sarah Alexander*, Case No. 19-1056-tmd (the "Beacon Adversary Suit").

13. On August 27, 2019, CHIC filed its Complaint for Determination of Non-Dischargeability of Certain Debts Pursuant to 11 U.S.C. §§ 523(a)(4) and (a)(6) (the "Adversary Complaint") against the Debtor, commencing an adversary proceeding in this Court styled *Catholic Health Initiatives Colorado, doing business as Sisters of Charity Health Services Colorado v. Abigail Sarah Alexander*, Case No. 19-1058-tmd (the "CHIC Adversary Suit").

14. On September 27, 2019, the Debtor filed a motion to dismiss the Adversary Complaint [Docket No. 5] (the "Motion to Dismiss") and an answer to the Adversary Complaint [Docket No. 6].

15. On or about October 29, 2019, Beacon and CHIC entered into a Settlement Agreement and Mutual Release, whereby CHIC agreed to pay Beacon the total sum of $368,000 (the "Beacon Settlement Payment") in exchange for a release of the Mechanic's Lien and all of Beacon's claims in the Colorado Litigation, the Bankruptcy Case, and the Beacon Adversary Suit and other claims that Beacon may have against CHIC, Monarch, the Debtor, and Javernick

that arise out of or in any way relate to the Roofing Contract, the Roofing Project, the Roofing Materials, the Property, the CCHP Property, the Ground Lease, the U.S. Bank DOT, the Invoices, the Beacon Indebtedness, the Mechanic's Lien, and the Lis Pendens.

16. Shortly thereafter, CHIC and the Debtor reached a settlement of their disputes, ultimately memorialized in the Settlement Agreement.

17. On December 26, 2019, CHIC filed a proof of claim in the Bankruptcy Case, asserting an unsecured claim against the Debtor consistent with the terms of the Settlement Agreement [Claim No. 9-1] (the "Claim").

C. **The Settlement Agreement**

18. The Settlement Agreement fully and finally resolves the CHIC Adversary Suit and the Claim in the Bankruptcy Case and all other claims and disputes between the Debtor and CHIC arising out of or in any way relating to the Roofing Contract, the Roofing Project, the Roofing Materials, the Property, the CCHP Property, the Ground Lease, the U.S. Bank DOT, the Invoices, the Beacon Indebtedness, the Mechanic's Lien, the Lis Pendens, and the Beacon Settlement Payment.

19. Under the Settlement Agreement, the Debtor will pay CHIC the total sum of $100,000.00 (the "Settlement Amount") in installment payments. The first installment payment will be in the amount of $5,000.00, due within three business days after an order approving the Settlement Agreement becomes final and no longer subject to appeal. All further installments will be due in monthly amounts of no less than $1,666.67, over 57 months. If the Debtor fails to make a required payment when due to CHIC (or defaults in any other way under the Settlement Agreement), she has agreed that CHIC may collect an amount equal to 1.5 times any then unpaid

4841-8636-9714.3

portion of the Settlement Amount, with interest to accrue thereon at the rate of interest as provided in 28 U.S.C. § 1961, calculated from the date of her default, plus CHIC's reasonable attorneys' fees and costs associated with enforcing the Settlement Agreement. To facilitate this settlement, the Debtor has also agreed that (1) all amounts owing under the Settlement Agreement will be deemed non-dischargeable, except any of CHIC's attorneys' fees and costs associated with enforcing the Settlement Agreement because they do not constitute pre-petition debts subject to discharge, and (2) CHIC's Claim, based on the terms of the Settlement Agreement, will be deemed fully allowed in the Bankruptcy Case. An order deeming the Claim fully allowed is included in the proposed order granting this motion. An agreed judgment (to be filed in the CHIC Adversary Proceeding) resolving the CHIC Adversary Proceeding by deeming the Debtor's debts to CHIC under the Settlement Agreement non-dischargeable, except any of CHIC's attorneys' fees and costs associated with enforcing this Agreement because they do not constitute pre-petition debts subject to discharge, is also attached to this motion.

20. The specific key terms of the Settlement Agreement are[1]:

- **Settlement Payment/Monthly Installments**. Commencing on the Effective Date (as defined below), the Debtor will pay CHIC the Settlement Amount, as follows:

  - An initial payment of $5,000.00 USD, to be received by CHIC no later than 5:00 p.m. Mountain time on the date that is three business days after the Effective Date (the "Initial Payment").

  - The remaining balance of the Settlement Amount ($95,000.00 USD) (the "Remaining Balance") in monthly installments of no less than the sum of $1,666.67 per month (the "Installments"), so as to be received by CHIC no later than 5:00 p.m. Mountain time on the first (1st) day of each month commencing on April 1, 2020 until the Remaining Balance is paid in full.

---

[1] These terms are provided as a summary and are not intended to amend, modify, or limit the Settlement Agreement. The Settlement Agreement governs in the event of any conflict between these summarized terms and the Settlement Agreement or any omission of a term of the Settlement Agreement from this summary.

- All payments required to be made to CHIC under the Settlement Agreement (including the Initial Payment and the Installments) will be made by check or certified funds made payable to "Catholic Health Initiatives Colorado" with a notation that it is a settlement payment and delivered to CHIC at the following address (unless CHIC provides the Debtor with a different address pursuant to the Settlement Agreement):

    > Catholic Health Initiatives Colorado
    > 9100 E. Mineral Circle
    > Centennial, Colorado 80112
    > Attn: Legal Department

- Time is of the essence with respect to all payments required to be made to CHIC pursuant to the Settlement Agreement.

- Notwithstanding the foregoing, the Debtor may prepay any portion of the Settlement Amount at any time and without penalty.

- The amount of any distribution that CHIC receives in the Bankruptcy Case on account of its Claim will be treated as a payment made by the Debtor and the amount of the distribution will be credited against the Settlement Amount; *provided* that any such distribution to CHIC will not relieve the Debtor of her obligations to pay the monthly Installments to CHIC as provided in the Settlement Agreement.

- **Default**.  Each of the following will constitute an "Event of Default" under the Settlement Agreement:

    - If the Debtor fails to pay CHIC any of the payments required under the Settlement Agreement when due;

    - If any of the payments required under the Settlement Agreement are returned for non-payment or insufficient funds;

    - Except for the Bankruptcy Case, if the Debtor files or notifies CHIC that she intends to file a petition under the United States Bankruptcy Code and/or initiates a proceeding under any similar law or statute relating to bankruptcy or insolvency;

    - Except in connection with the Bankruptcy Case, if all or substantially all of the Debtor's assets are sold, transferred, assigned and/or liquidated; and/or

    - If the Debtor breaches any term of the Settlement Agreement.

4841-8636-9714.3

- **Entry of Judgment**. Upon mutual execution and delivery of the Settlement Agreement, the Debtor stipulated to entry of judgment, in the form attached to the Settlement Agreement as Exhibit A, in favor of CHIC (i) for the total Settlement Amount; (ii) upon the occurrence of an Event of Default, for an amount equal to 1.5 times any then unpaid portion of the Settlement Amount, with interest to accrue thereon at the rate of interest as provided by 28 U.S.C. § 1961, calculated from the date of the "Event of Default," plus CHIC's reasonable attorneys' fees and costs associated with enforcing the Settlement Agreement; (iii) deeming the Claim fully allowed as a general unsecured claim in the Bankruptcy Case; and (iv) that all debts that the Debtor owes to CHIC under the Settlement Agreement will be non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(4) and (a)(6), except any of CHIC's reasonable attorneys' fees and costs associated with enforcing the Settlement Agreement (the "Judgment").[2] The Debtor and CHIC agreed to seek entry of the Judgment through this motion in connection with the Court's approval of the Settlement Agreement. Upon the occurrence of an "Event of Default" under the Settlement Agreement, and in addition to any other remedies available to CHIC at law or in equity, CHIC will be entitled to immediately take any and all steps to perfect, execute, collect on, and/or otherwise enforce the Judgment. The Debtor expressly agrees, authorizes, consents to, entry of the Judgment and will not contest, object, and/or otherwise challenge the Judgment and/or CHIC's efforts to perfect, execute, collect on, and/or otherwise enforce the Judgment. The Debtor further agrees and acknowledges that upon entry, the Judgment is a valid and fully enforceable judgment against her and her assets, and the Debtor waives any and all rights to oppose, vacate, set aside, seek to limit or stay the enforceability of, or otherwise contest, the Judgment, its entry, or any attempt to execute upon the Judgment. Notwithstanding the preceding, the Debtor does not waive the real property exemptions and personal property exemptions that she is entitled claim under the Texas Property Code. CHIC will file a notice of satisfaction of judgment with this Court after CHIC receives all amounts owed to it under the Settlement Agreement and the Judgment.

- **Allowance of Claim**. The Debtor agrees that the Claim will be deemed an allowed claim as a non-dischargeable general unsecured claim in the full amount asserted and will not be subject to any objection, setoff, disallowance, or reduction.

- **CHIC Release of the Debtor**. Except for any claim in connection with the enforcement of the Settlement Agreement, on the date that is 91 days after the date that CHIC receives full payment of all amounts due to it under the Settlement Agreement and the Judgment (the "Debtor Release Effective Date"), CHIC and its officers, directors, principals, shareholders, employees, agents, representatives, managers, members, partners, attorneys, affiliates, subsidiaries, successors, and assigns, will absolutely and unconditionally fully release, acquit, waive and forever

---

[2] The Judgment is also submitted with this motion in compliance with L. Rule 9019(c)(2).

4841-8636-9714.3

discharge the Debtor and each of the Debtor's employees, agents, representatives, partners, attorneys, affiliates, subsidiaries, successors, heirs, and assigns of and from any and all claims, demands, actions, causes of action, suits, obligations, promises, agreements, debts, liens, breaches, torts, costs, damages, penalties, compensation and liabilities of any kind, nature, or amount whether in law or equity, whether known or unknown, anticipated or unanticipated, liquidated or unliquidated (including, without limitation, all claimed or unclaimed compensatory damages, consequential damages, incidental damages, exemplary damages, punitive damages, interest, costs, expenses, fees, and attorney's fees and costs) which arise out of or are in any way related to the Roofing Contract, the Roofing Project, the Roofing Materials, the Property, the CCHP Property, the Ground Lease, the U.S. Bank DOT, the Invoices, the Beacon Indebtedness, the Mechanic's Lien, the Lis Pendens, and the Beacon Settlement Payment, including, without limitation, all claims that were or could have been asserted in the Litigation, the Bankruptcy Case, the Claim, and/or the CHIC Adversary Suit. Notwithstanding the foregoing, nothing in the Settlement Agreement will release, discharge, or waive any claims for a breach of the Settlement Agreement or any action to enforce the terms of the Settlement Agreement or the Judgment.

- **The Debtor's Release of CHIC**. Except for any claim in connection with the enforcement of the Settlement Agreement, upon the Effective Date, the Debtor and each of the Debtor's employees, agents, representatives, partners, attorneys, affiliates, subsidiaries, successors, heirs, and assigns, will absolutely and unconditionally fully release, acquit, waive and forever discharge CHIC and its officers, directors, principals, shareholders, employees, agents, representatives, managers, members, partners, attorneys, affiliates, subsidiaries, successors, and assigns of and from any and all claims, demands, actions, causes of action, suits, obligations, promises, agreements, debts, liens, breaches, torts, costs, damages, penalties, compensation and liabilities of any kind, nature, or amount whether in law or equity, whether known or unknown, anticipated or unanticipated, liquidated or unliquidated (including, without limitation, all claimed or unclaimed compensatory damages, consequential damages, incidental damages, exemplary damages, punitive damages, interest, costs, expenses, fees, and attorney's fees and costs) which arise out of or are in any way related to the Roofing Contract, the Roofing Project, the Roofing Materials, the Property, the CCHP Property, the Ground Lease, the U.S. Bank DOT, the Invoices, the Beacon Indebtedness, the Mechanic's Lien, the Lis Pendens, and the Beacon Settlement Payment, including, without limitation, all claims that were or could have been asserted in the Litigation, the Bankruptcy Case, or the CHIC Adversary Suit. Notwithstanding the foregoing, nothing in the Settlement Agreement will release, discharge, or waive any claims for a breach of the Settlement Agreement or any action to enforce the terms of the Settlement Agreement.

- **Court Approval and Effective Date**. No later than the date that is three business days after mutual execution and delivery of the Settlement Agreement, the Debtor and/or CHIC agreed to file this motion with the Court seeking approval of the

Settlement Agreement pursuant to Fed. R. Bankr. P. 9019(a) and entry of the Judgment in the CHIC Adversary Suit. In furtherance of the Settlement Agreement, the Debtor and CHIC agreed that the proposed order granting this motion and approving the Settlement Agreement (the "9019 Order") will also provide that the Claim will be deemed an allowed general unsecured claim in the full amount asserted and that the Claim will not be subject to any objection, setoff, disallowance, or reduction. The Settlement Agreement will be effective on the date that (i) the Bankruptcy Court enters the Judgment, and (ii) the 9019 Order becomes final and no longer subject to appeal (the "Effective Date"). If the Court denies this motion or the 9019 Order is reversed or vacated on appeal, the Settlement Agreement will have no force or effect.

## II. JURISDICTION, VENUE, AND STATUTORY PREDICATES

21. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B), and (O).

22. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

23. The predicates for the relief requested in this motion is Bankruptcy Rule 9019(a) and L. Rule 9019.

## III. RELIEF REQUESTED

24. CHIC requests entry of an order approving the Settlement Agreement pursuant to Bankruptcy Rule 9019(a) and L. Rule 9019 and entry of the Judgment in the CHIC Adversary Proceeding.

## IV. BASIS FOR RELIEF

25. Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

26. In reviewing a motion to approve a settlement, the Court should determine whether the settlement is fair and equitable and in the best interest of the bankruptcy estate and its creditors. *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortgage Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995); *U.S. v. Aweco, Inc. (In re Aweco, Inc.)*, 725 F.2d 293, 298 (5th Cir. 1984), *cert. denied*, 469 U.S. 880 (1984). The Fifth Circuit has developed a three-part test for evaluating whether a settlement is fair, equitable, and in the best interests of the estate and its creditors: (i) the probability of success on the merits, with due consideration for the uncertainty in fact and law; (ii) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and (iii) all other factors bearing on the wisdom of the compromise. *Foster Mortgage Corp.*, 68 F.3d at 917; *In re Jackson Brewing Co.*, 624 F.2d 609 (5th Cir. 1980). The third prong (other factors bearing on the wisdom of the compromise) has been held to refer to "the paramount interest of creditors with proper deference to their reasonable views." *Foster Mortgage Corp.*, 68 F.3d at 917. While it is necessary for the proponent of a compromise to set forth the factual and legal basis for the compromise so the court can make an intelligent and informed evaluation of the proposed settlement, it is not incumbent upon the proponent to present a mini-trial or a full evidentiary hearing. *Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1158-59 (5th Cir. 1988), *cert. denied*, 105 S. Ct. 31 (1989); *Aweco*, 725 F.2d at 298.

27. CHIC's settlement with the Debtor is fair and equitable and in the best interest of the Debtor and her creditors. To that end, each of the three prongs considered by courts evaluating approval of settlements under Bankruptcy Rule 9019 is satisfied here.

A. **Probability of Success on the Merits, with
Due Consideration for Uncertainty in Fact and Law.**

28. CHIC alleges in the CHIC Adversary Suit that it paid Monarch the full Contract Price for the Roofing Project that Beacon performed; but Monarch failed to pay Beacon's Invoices, totaling $368,343.68. CHIC claims that Monarch failed to pay Beacon's Invoices because the Debtor failed to hold the funds that CHIC paid Monarch in trust as required by C.R.S. § 38-22-127, instead diverting the funds, rendering her debts to CHIC non-dischargeable. The CHIC Adversary Suit accordingly asserts non-dischargeability claims against the Debtor under 11 U.S.C. § 523(a)(4) and (6) for an amount of at least $368,343.68.

29. Because of Beacon's failure to receive the funds that the Debtor was to hold in trust for payment to Beacon, Beacon recorded a mechanics lien encumbering CHIC's Property. To avoid Beacon's foreclosure on CHIC's property, CHIC agreed to pay Beacon the Beacon Settlement Payment, in the total amount of $368,000. CHIC's payment of the Beacon Settlement Payment constituted a double payment by CHIC for the Roofing Project: once to Monarch, a second time to avoid a mechanic's lien foreclosure.

30. While the Debtor has filed a motion to dismiss the CHIC Adversary Suit, CHIC would strongly contest the Debtor's Motion to Dismiss, and CHIC believes it has a strong chance of success on the merits of the litigation. Meanwhile, CHIC's settlement with the Debtor reduces the Debtor's exposure to CHIC by more than 70%, to $100,000.00 (assuming that the Debtor complies with the settlement). The settlement also permits the Debtor to pay CHIC the Settlement Amount over fifty-seven months – a payment schedule that CHIC expects the Debtor can maintain. The Debtor's settlement with CHIC is thus a fair compromise for the claims CHIC has asserted against her, given the strength of CHIC's claims and inherent risks of litigation.

B.  **Settlement avoids Lengthy Litigation and
    Attendant Expense, Inconvenience, and Delay.**

31.  The settlement avoids litigation and any attendant expense, inconvenience, and delay.  The CHIC Adversary Suit remains in its early stages, before discovery has commenced.  The CHIC Adversary Suit raises numerous factual issues, and CHIC expects that litigating it to completion would require the Debtor (and CHIC) to incur substantial fees and costs and spend judicial resources.  Approving the Settlement Agreement, on the other hand, would avoid these litigation costs.  Also, because the Debtor has agreed that the Judgment can be immediately entered, litigation would delay the resolution of this matter far beyond the time for resolution under the Settlement Agreement.  Indeed, approving the Settlement Agreement will immediately resolve the litigation rather than awaiting a judgment at the conclusion of discovery and trial.  As a result, approving the settlement will avoid incurring substantial legal fees and costs and further delay in litigating the CHIC Adversary Proceeding.

C.  **Settlement is in the Best Interest of the Debtor's Creditors.**

32.  The settlement resolves a $368,343.68 claim against the estate for $100,000.00 to be paid by the Debtor.[3]  As a result, the Debtor's creditors will not have their claims diluted by the $368,343.68 that CHIC would otherwise assert as a general unsecured claim against the estate in the absence of a settlement.  Approving the settlement is thus in the best interest of the Debtor's creditors and her estate.

---

[3] To the extent that CHIC receives a distribution from the estate on account of its Claim, the distribution will be credited against the Debtor's payment obligations under the Settlement Agreement.  (Settlement Agreement, § 2(f).)

WHEREFORE, Creditor-Plaintiff, Catholic Health Initiatives Colorado, doing business as Sisters of Charity Health Services Colorado, respectfully requests that the Court enter an order in the form submitted with this motion approving the Settlement Agreement.

Respectfully submitted this 7th day of February 2020.

By: *Adam L. Hirsch*
Adam L. Hirsch
CO State Bar No. 44306
(admitted *pro hac vice*)

Kutak Rock LLP
1801 California St., Suite 3000
Denver, Colorado 80202
Telephone: (303) 297-2400
Facsimile: (303) 292-7799
Email: adam.hirsch@kutakrock.com

ATTORNEYS FOR PLAINTIFF-CREDITOR, CATHOLIC HEALTH INITIATIVES COLORADO, DOING BUSINESS AS SISTERS OF CHARITY HEALTH SERVICES COLORADO

## CERTIFICATE OF CONFERRAL

Counsel for CHIC conferred with Stephen Matthew Schultz, Esq., counsel to the debtor, Abigail Sarah Alexander, regarding this motion by email and telephone and shared a draft of the motion with Mr. Schultz. Mr. Schultz advised that the debtor does not oppose the relief sought in this motion.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **MOTION TO APPROVE SETTLEMENT BETWEEN DEBTOR AND CATHOLIC HEALTH INITIATIVES COLORADO D/B/A SISTERS OF CHARITY HEALTH SERVICES COLORADO PURSUANT TO FED. R. BANKR. P. 9019(a) AND L. RULE 9019** has been served to the persons listed below on February 7, 2020, via the United States Postal Service first class mail, postage prepaid, and by electronic means through CM/ECF.

/s/ *Adam L. Hirsch*

| | |
|---|---|
| Stephen Matthew Schultz, Esq.<br>THE SCHULTZ LAW FIRM PC<br>The Penthouse, Suite 104<br>1212 Guadalupe Street<br>Austin, Texas 78701<br><br>Counsel to Debtor-Defendant,<br>Abigail Sarah Alexander | Brian Talbot Cumings<br>Graves Dougherty Hearon & Moody, PC<br>401 Congress Ave<br>Suite 2700<br>Austin, TX 78701 |
| United States Trustee (SMG17)<br>United States Trustee<br>903 San Jacinto Blvd, Suite 230<br>Austin, TX 78701-2450 | American Express<br>P.O. Box 650448<br>Dallas, TX 75265-0448 |
| American Express National Bank<br>c/o Becket and Lee LLP<br>P.O. Box 3001<br>Malvern, PA 19355-0701 | Beacon Roofing Co.<br>c/o Law Offices of Shannon J. Posner<br>11350 McCormick Rd #700<br>Hunt Valley, MD 21031-1002 |
| Beacon Sales Acquisition Inc.<br>c/o Neil J. Orleans<br>Ross & Smith PC<br>700 N Pearl St #1610<br>Dallas, TX 75201-7459 | Capital One<br>P.O. Box 60599<br>City of Industry, CA 91716-0599 |

Capital One Bank (USA)
4515 N Santa Fe Ave.
Oklahoma City, OK 73118-7901

Capital One Bank (USA), N.A.
by American InfoSource as agent
P.O. Box 71083
Charlotte, NC 28272-1083

Credit Union of Texas
P.O. Box 515718
Dallas, TX 75251-5718

Ford Motor Credit
P.O. Box 790093
Saint Louis, MO 63179-0093

Justin D. Javernick
c/o B. Weldon Ponder, Jr., Attorney
4408 Spicewood Springs Road
Austin, TX 78759-8504

Justin Javernick
5668 Blanca Ct.
Golden, CO 80403-2191

Nelnet
121 South 13th Street, Suite 201
Lincoln, NE 68508-1922

Nelnet Student Loan
P.O. Box 2970
Omaha, NE 68103-2970

Regions Mortgage
7130 Goodlett Farms Parkway
A4W
Cordova, TN 38016-4991

Regions Mortgage
P.O. Box 18001
Hattiesburg, MS 39404-8001

Regions Mortgage
c/o Shapiro Schwartz, LLP
13105 Northwest Freeway
Suite 1200
Houston, TX 77040-6355

UHaul Moving and Storage of Cedar Park
700 S. Bell Blvd.
Cedar Park, TX 78613-3804

United States Trustee – AU12
United States Trustee
903 San Jacinto Blvd, Suite 230
Austin, TX 78701

Wells Fargo Dealer Services
P.O. Box 10709
Raleigh, NC 27605-0709

Abigail Sarah Alexander
707 Theresa Cv
Cedar Park, TX 78613-4042

Evan Sean Harlow
The Harlow Law Firm, PLLC
1464 E. Whitestone Blvd.
Ste. 2201
Cedar Park, TX 78613-9080

Ron Satija
P.O. Box 660208
Austin, TX 78766-7208